IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GAVIN GORYL and RAUL LABARDINI,  §
                                 §
            Plaintiffs,           §
                                 §
v.                               §
                                 §    CIVIL ACTION NO. H-07-2079
TIDAL SOFTWARE, INC. and         §
FLINT J. BRENTON,                §
                                 §
            Defendants.           §

## MEMORANDUM OPINION AND ORDER

Pending before the court are plaintiffs Gavin Goryl and Raul Labardini's Motion to Remand (Docket Entry No. 5) and defendants Tidal Software, Inc. and Flint J. Brenton's Motion to Strike Declaration of Gavin Goryl (Docket Entry No. 19). For the reasons stated below, both motions will be denied.

## I.   Background

Defendant Tidal Software, Inc. ("Tidal") is a California software company with offices in Palo Alto, California, and Houston, Texas.[1] Plaintiffs, former Tidal employees, brought suit against Tidal and defendant Flint J. Brenton, the President and CEO of Tidal,[2] on May 22, 2007, asserting claims for breach of

---

[1] Plaintiffs' Original Petition, pp. 1, 4, attached to Notice of Removal, Docket Entry No. 1.

[2] Defendants' Memorandum in Opposition to Plaintiffs' Motion to Remand, Docket Entry No. 14, Exhibit A, Declaration of Flint J. Brenton, p. 1.

contract, wrongful discharge, fraud, breach of fiduciary duty and the duty of good faith and fair dealing, conversion, libel, defamation, slander, tortious interference with contracts and business relations, and negligent misrepresentation.[3]  Defendants timely removed the action to this court on the basis of diversity jurisdiction.[4]  Plaintiffs now move the court to remand the lawsuit to state court, arguing that the court is without jurisdiction due to a lack of complete diversity.[5]  Defendants responded, arguing that both are citizens of California.[6]

## II.  <u>Analysis</u>

In order for a federal court to exercise diversity jurisdiction, diversity must be complete.  That is, the citizenship of all plaintiffs must be different from the citizenship of all defendants.  28 U.S.C. § 1332(a)(1); <u>City of Indianapolis v. Chase Nat'l Bank</u>, 62 S. Ct. 15, 17 (1941).  When challenged, the party seeking to establish diversity jurisdiction must show by a preponderance of the evidence that complete diversity exists.  <u>Welsh v. American Surety Co.</u>, 186 F.2d 16, 17 (5th Cir. 1951)

---

[3]Plaintiffs' Original Petition, attached to Notice of Removal, Docket Entry No. 1.

[4]Notice of Removal, Docket Entry No. 1.

[5]Plaintiffs' Motion to Remand, Docket Entry No. 5, p. 1.

[6]Defendants' Memorandum in Opposition to Plaintiffs' Motion to Remand, Docket Entry No. 14.

-2-

(citing <u>McNutt v. Gen. Motors Acceptance Corp.</u>, 56 S. Ct. 780, 785 (1936)).  Any doubts must be resolved in favor of remand.  <u>Manguno v. Prudential Property & Cas. Ins. Co.</u>, 276 F.3d 720, 723 (5th Cir. 2002).

**A.   Defendant Brenton's Citizenship**

Plaintiffs argue that Brenton is a citizen of Texas because he owns a home in Texas.[7]  For purposes of diversity jurisdiction an individual's citizenship is based on his domicile.  <u>Mas v. Perry</u>, 489 F.2d 1396, 1399 (5th Cir. 1974).  "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . . .'"  <u>Id</u>. (quoting <u>Stine v. Moore</u>, 213 F.2d 446, 448 (5th Cir. 1954)).  A change of domicile requires taking up residence in another domicile with the intention to remain there.  <u>Mas</u>, 489 F.2d at 1399.

In determining a party's domicile the court considers various factors, none of which are determinative.  These factors include where the party exercises political or civil rights, pays taxes, owns real and personal property, holds licenses, maintains bank accounts, belongs to clubs and churches, operates a business or is employed, and maintains a family home.  <u>Coury v. Prot</u>, 85 F.3d 244, 251 (5th Cir. 1996).  <u>See also</u> <u>Deep Marine Tech., Inc. v.</u>

---

[7]Plaintiffs' Motion to Remand, Docket Entry No. 5, p. 2, Exhibit A.

-3-

Conmaco/Rector, L.P., 2007 WL 1850423 at *3 (S.D. Tex. June 26, 2006) (listing factors).  Courts also employ a rebuttable presumption that "a married man is presumed to be domiciled where his wife and family live."  Wade v. Wood, 2006 WL 3499504 at *2 (S.D. Tex. Dec. 5, 2006) (quoting 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FED. PRAC. & PROC.: JURISDICTION 2d § 3612).

In an affidavit Brenton declares that he has lived in San Jose, California, with his wife and their three children since August of 2003 and that he owns a home there, that his children have attended school in San Jose since August of 2003, and that he considers San Jose his home and intends to continue living in California indefinitely.[8]  Brenton further states that he works and maintains a business office in San Jose, that he is registered to vote in California and voted there in the 2004 general election, that he holds a California driver's license, maintains bank and brokerage accounts in California, owns four vehicles registered in California, and has paid state and local taxes in California since August of 2003.[9]  Brenton also states that he and his family own season tickets to local sporting events, are members of a church in San Jose, and that he is a member of the Silicon Valley Leadership Group.[10]  He has not had a Texas bank account, driver's license, or

---

[8]Defendants' Memorandum in Opposition to Plaintiffs' Motion to Remand, Docket Entry No. 14, Exhibit A, Declaration of Flint J. Brenton, ¶¶ 7-8, 12.

[9]Id. at ¶¶ 2, 4-6, 8.

[10]Id. at ¶ 10.

post office box since moving to California in 2003, and he is not registered to vote in Texas.[11]  Brenton declares that he rents the home he owns in Texas and has held it only as investment property since early 2004.[12]  Plaintiffs have not presented any contradictory evidence.

The court is persuaded that defendants have shown by a preponderance of the evidence that Brenton is domiciled in California.  Even assuming, <u>arguendo</u>, that Brenton was once a citizen of Texas, he has shown that he has established residence in California with the intention of remaining there.[13]  <u>Mas</u>, 489 F.2d at 1399.

## B.   Defendant Tidal's Citizenship

In their motion for remand, plaintiffs argue that Tidal is a Texas citizen because the "bulk of its employees and business operations" are in Houston, Texas.[14]  To support this assertion plaintiff Gavin Goryl ("Goryl") submitted a declaration stating that Tidal "has roughly 65 employees in its Houston, Texas, office

---

[11]<u>Id.</u> at ¶ 11.

[12]<u>Id.</u> at ¶ 13.

[13]Plaintiffs argue that defendants must prove California citizenship "without a doubt."  Plaintiffs' Supplemental Brief on their Motion to Remand, Docket Entry No. 15, p. 5.  Although plaintiffs correctly state that the court must resolve doubts as to removal in favor of remand, this does not alter the standard that defendants must prove diversity by a preponderance of the evidence.

[14]Plaintiffs' Motion to Remand, Docket Entry No. 5, p. 2.

as opposed to only about 20 or so employees in its California office" and that "[r]oughly half" of Tidal's executives and senior personnel are based in and work out of Tidal's Houston office.[15] Goryl also states that the "majority" of Tidal's product development team, customer support, and other operations, including annual sales meetings, are in Houston.[16] Defendants move to strike Goryl's declaration because he did not have personal knowledge of the alleged facts since his employment was terminated in March of 2006, before the lawsuit was filed or removed.[17] However, this fact goes to the weight of the evidence, not its admissibility. Accordingly, defendant's motion will be denied.

For purposes of diversity jurisdiction, a corporation is a citizen of both its state of incorporation and the state of its principal place of business.[18]  28 U.S.C. § 1332(a).  Teal Energy USA, Inc. v. GT, Inc., 369 F.3d 873, 875 (5th Cir. 2004).  The Fifth Circuit has developed the "total activity" test to determine a corporation's principal place of business.  Teal, 369 F.3d at 876.  Under this test the court considers two "focal points": the location of the corporation's "nerve center" and its "place of

---

[15]Plaintiffs' Supplemental Brief on their Motion to Remand, Docket Entry No. 15, Exhibit A, Declaration of Gavin Goryl, p. 1.

[16]Id. at 2.

[17]Defendants' Motion to Strike Declaration of Gavin Goryl, Docket Entry No. 19.

[18]The parties do not dispute that Tidal, as a California corporation, is a citizen of California for diversity purposes.

activities." Id.  Which of the two focal points predominates
depends on the totality of the facts, "including the corporation's
organization and the nature of its activities." Id.  Three
general principles guide the "total activity" inquiry.

> (1) when considering a corporation whose operations
> are far flung, the sole nerve center of that
> corporation is more significant in determining the
> principal place of business; (2) when a corporation
> has its sole operation in one state and executive
> offices in another, the place of activity is
> regarded as more significant; but (3) when the
> activity of a corporation is passive and the "brain"
> of the corporation is in another state, the situs of
> the corporation's "brain" is given greater
> significance.

J.A. Olson v. City of Winona, 818 F.2d 401, 411 (5th Cir. 1987).

See also Nauru Phosphate Royalties, Inc. v. Drago Daic Interest,
Inc., 138 F.3d 160, 164 (5th Cir. 1998) (listing the three general
principles).  The "nerve center" and "place of activity" tests
"have evolved because corporations are organized in different ways,
and our analysis must be flexible enough to determine the place at
which a given corporation actually does its principal business."
J.A. Olson, at 404.

Defendants argue that Tidal's operations are far flung and
that its nerve center and principal place of business are in
Palo Alto, California.[19]  To support this argument Tidal asserts
that its headquarters are in Palo Alto, where it maintains its

---

[19]Defendants' Memorandum in Opposition to Plaintiffs' Motion
to Remand, Docket Entry No. 14, pp. 7-8.

corporate and financial records, its board of director meetings minutes, and its employee files and payroll records.[20]   Defendants also state that Tidal employs approximately 40 people in California, 60 people in Texas, and 16 people (including members of Tidal's sales team) in nine other states, and that Tidal's human resources director splits her time between California and Texas.[21] Defendants note that Tidal's contracts director (who negotiates Tidal's contracts with customers), its marketing group, members of its product development and quality assurance group, and consulting director all work out of its California office and that its board of director meetings, contract negotiations, and yearly audits all take place there.[22]   Additionally, Tidal offers the declaration of Tidal's Vice-President of Finance, who lists various executives and senior personnel who work out of the California office and who states that Tidal's flagship product, which accounts for "approximately 90% of Tidal's product-related revenues, was invented, built, and is maintained" at Tidal's California office.[23]

---

[20]Id. at Exhibit A, Declaration of Flint J. Brenton, ¶¶ 2, 14, 16.

[21]Id. at ¶¶ 15–16.   Brenton states that Tidal employs individuals in Florida, Georgia, Illinois, Kentucky, Massachusetts, Minnesota, North Carolina, Ohio, and Washington.

[22]Id. at ¶ 16.

[23]Defendants' Surreply to Plaintiffs' Motion to Remand and Plaintiffs' Supplemental Brief in Support Thereof, Docket Entry No. 18, Exhibit A, Declaration of Charlie Velasquez, ¶ 5.

The court concludes that Tidal's "nerve center" is in California. Defendants have shown by a preponderance of the evidence that Tidal's California office is the location of its executive office, directors' meetings, and contract negotiations; and plaintiffs have offered no evidence to the contrary.

After considering the totality of the circumstances surrounding Tidal's activities and corporate structure, the court is also persuaded that Tidal's business operations are "far flung" and, therefore, that the company's nerve center is most significant in determining Tidal's principal place of business. Teal, 369 F.3d at 876. A corporation is involved in "far flung" activities if it carries on various operations in different states. Tidal has produced evidence that it employs sales people in multiple states and that it engages in product development in its California office. Plaintiffs have failed to produce any substantial controverting evidence. Although plaintiffs emphasize the fact that Tidal has more employees in Texas than in California, this is not determinative because Tidal conducts business activities in various states. See Teal, 369 F.3d at 876.[24] The court therefore concludes that Tidal's principal place of business is in

_____

[24]Even if the court applied the "place of activity" test, defendants have produced sufficient evidence to conclude that its place of activity is in California. Unlike in Teal, not all of Tidal's employees live in Texas, many (if not most) of its executives live in California, its business records are maintained in California, and Texas is not the only state in which Tidal has business operations. See Teal, 369 F.3d at 877.

-9-

California.  J.A. Olson, 818 F.2d at 407 ("Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center . . . .").

## C.  **Proper Removal**

Plaintiffs also argue that remand is appropriate because defendants did not serve a copy of the court's procedures on plaintiffs as required by this court's procedural rules.  However, this is not a basis for remand.  The removal statutes provide the proper procedures for removal.  28 U.S.C. §§ 1441, 1446.  These statutes do not require service of local federal courts' rules as a predicate for removal.  Cf. Sauer-Danfoss Inc. v. Hansen, 2004 WL 1921023 at *4 (N.D. Ill. July 9, 2004) ("The narrow Local Rule governing removals is not meant to extend the jurisdictional deadline for filing timely notices of removal, nor could it extend that deadline."); Weigand v. Paul Revere Life Ins. Co., 1998 WL 142365 (N.D. Ill. Mar. 19, 1998) (citing Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1046 (2d Cir. 1991)) (Local rules "must be read in conjunction with § 1446(b) and cannot conflict with or override the statute.").

## III.  Conclusion and Order

For the reasons stated above, the court concludes that complete diversity between the parties exists, and the exercise of

federal jurisdiction is warranted.   Plaintiffs' Motion to Remand (Docket Entry No. 5) is therefore **DENIED**.   Also, for the reasons stated above, Defendants' Motion to Strike the Declaration of Gavin Goryl (Docket Entry No. 19) is **DENIED.**

      **SIGNED** at Houston, Texas, on this 27th day of August, 2007.

SIM LAKE
UNITED STATES DISTRICT JUDGE